UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD LAYMAN,

        Plaintiff,                       CIVIL ACTION NO. 08-12818

        v.                            DISTRICT JUDGE THOMAS L. LUDINGTON

COMMISSIONER OF              MAGISTRATE JUDGE VIRGINIA MORGAN
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

      This is an action for judicial review of the defendant's decision denying plaintiff's application for Social Security disability benefits. Plaintiff alleged that he became disabled as of March 2005 due to back and neck pain. Plaintiff had a hearing before an ALJ, and that determination became the final decision of the defendant agency. The ALJ found that plaintiff had severe impairments of cervical and lumbar degenerative disc disease and right knee degenerative joint disease. The defendant further found that plaintiff was not able to perform his past relevant work but did retain the residual functional capacity to perform other work that existed in significant numbers. Plaintiff contends that this finding is not supported by substantial evidence. Plaintiff argues that if the ALJ had accepted the opinion of the treating physician, which would have restricted plaintiff to sedentary work, then plaintiff would have been found disabled when he turned 50 years old in May, 2008. Plaintiff asks the court to reverse the decision and award benefits as of plaintiff's 50th birthday.[1] In the alternative, plaintiff asks for a

---

[1] Plaintiff has the option of filing another application. It also should be noted that plaintiff did not turn 50 until four months after the ALJ's decision so the issue of disability as of that date was never before the ALJ, and consequently, it is not before the court.

remand to have the agency further consider the appropriate weight to give the treating physician's opinion. Defendant submits that substantial evidence supports the decision and it should be affirmed. For the reasons discussed in this Report, it is recommended that the defendant's motion for summary judgment be granted, that of the plaintiff denied, and the decision denying benefits be affirmed.

At the time of the ALJ's decision, plaintiff was 49 years old, with a high school education, two years of college (Tr. 85), and past relevant work as a fork lift driver. The ALJ considered the testimony of the vocational expert, who opined that if plaintiff could perform light work, with a sit/stand option, no climbing ropes, ladders, or scaffolds, occasionally climb ramps and stairs, frequently but not constantly balance, stoop, kneel, crouch, and crawl with no more than occasional head rotation, plaintiff could work as a machine operator, assembler, and inspector. (Tr. 21-22, 81-82, 255-258)

*Standard of Review*

The issue before the court is whether to affirm the Commissioner's determination. In Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989), the court held that:

> Judicial review of the Secretary's decision is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards in reaching her conclusion. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L. Ed. 2d 842 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L. Ed. 2d 126 (1938). The scope of our review is limited to an examination of the record only. We do not review the evidence *de novo*, make credibility determinations nor weigh the evidence. Reynolds v. Secretary of Health and Human Services, 707 F.2d 927 (5th Cir. 1983).

Brainard, 889 F.2d at 681.

To establish a compensable disability under the Social Security Act, a claimant must demonstrate that he is unable to engage in any substantial gainful activity because he has a medically determinable physical or mental impairment that can be expected to result in death or has lasted, or can be expected to last, for at least 12 continuous months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a). If a claimant establishes that he cannot perform his past relevant work, the burden is on the Commissioner to establish that the claimant is not disabled by showing that the claimant has transferable skills which enable him to perform other work in the national economy. Preslar v. Secretary of HHS, 14 F.3d 1107 (6th Cir. 1994); Kirk v. Secretary of HHS, 667 F.2d 524, 529 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983).

*Plaintiff's Arguments*

Plaintiff argues that the opinion of his treating physician Dr. John M. Commet, D.O., was not given the appropriate weight. It is true that great deference is to be given to medical opinions and diagnoses of treating physicians. Harris v. Heckler, 756 F.2d 431 (6th Cir. 1985). It is also true that complete deference is given when said opinions are uncontradicted. However, in both instances, the opinion of the treating physician must be based on sufficient medical data. Garner v. Heckler, 745 F.2d 383, 391 (6th Cir. 1984); Houston v. Secretary of HHS, 736 F.2d 365, 367 (6th Cir. 1984). Where the doctor's physical capacity evaluation contains no substantiating medical opinions and is inconsistent with the doctor's previous opinions or other medical evidence, the defendant is not required to credit such opinions. Villarreal v. HHS, 818 F.2d 461, 463 (6th Cir. 1987). The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician. Warner v. Commissioner of Social Security, 375 F.3d 387 (2004) (citing Harris v. Heckler, 756 F.2d at 435).

Plaintiff also seems to claim that the ALJ did not properly evaluate his complaints of disabling pain. The ALJ found plaintiff was not entirely credible. (Tr. 19) Pain caused by an impairment can be disabling, but each individual has a different tolerance of pain. Houston v.

Secretary of HHS, 736 F.2d 365, 367 (6th Cir. 1984).  Therefore, a determination of disability based on pain depends largely on the credibility of the plaintiff.  Houston, 736 F.2d at 367; Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997); Villarreal v. Secretary of HHS, 818 F.2d 461, 463 (6th Cir. 1987).  Because determinations of credibility are peculiarly within the province of the ALJ, those conclusions should not be discarded lightly.  Villarreal, 818 F.2d at 463 and 464.

In Duncan v. Secretary of HHS, 801 F.2d 847 (6th Cir. 1986), this circuit modified its previous holdings that subjective complaints of pain may support a claim of disability.  Subsequently, the Social Security Act was modified to incorporate the standard.  20 C.F.R. § 404.1529 (1995).  A finding of disability cannot be based solely on subjective allegations of pain.  There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.  Jones v. Secretary of HHS, 945 F.2d 1365, 1369 (6th Cir. 1991). Here, plaintiff has shown some evidence of mild degenerative changes in his back and osteoarthritis of the cervical spine.  However, there are no findings or history of treatment that support the degree of pain alleged.

*Medical Evidence*

In this case, plaintiff saw Dr. Commet in August 2004 with complaints of neck pain.  X-rays showed mild facet arthrosis of the cervical spine.  (Tr. 113)  He prescribed medication and restricted plaintiff to no repetitive cervical rotational movements and to avoid extremes of extension and flexion.  Id.  In October, 2004, Dr. Commet noted that physical therapy had reduced plaintiff's pain 50 to 60 percent.  His ROM was near full.  The greatest discomfort comes with extension and rotation to the right.  The diagnosis was cervicalgia secondary to myositis and exacerbation of underlying facet arthrosis.  The PT was continued for one month so

that strengthening issues could be addressed.  He was taking his medication on an as needed basis. (Tr. 112)   In November, 2004, plaintiff reported working 12 hours five days a week. Plaintiff's MRI showed more cervical spondylosis, rather than herniated disc as the cause. Epidural steroid injections were discussed.  Plaintiff also reported low back pain which seemed to be flaring up.  Plaintiff was not taking his cholesterol medication.  Although lumbar pain was noted to be secondary to osteoarthritis and herniated disc, no x-rays are referenced to support that conclusion. (Tr. 110) At the end of the month, plaintiff reported good success, was essentially pain free, but when he returned to work, he reported a flare up from the jarring and turning.  The doctor referenced x-rays of the lumbar spine which showed some degenerative disc disease with facet arthritic changes.  (Tr. 109)  Dr. Commet gave plaintiff 30 Vicodin tablets to take in the evening or at bedtime.  (Tr. 109)

In November 2004, plaintiff was diagnosed with cervical disc bulge.  (Tr. 121) Plaintiff's MRI showed mild to moderate multilevel disc bulging, most pronounced at C5-6.  X-rays showed a mild right neuroforaminal narrowing at C3-4, mild left neuroforaminal narrowing at C5-6, and a small central disc herniation at T3-4 suggested on the sagittal images.  (Tr. 126) In December, 2004, plaintiff's MRI showed no evidence of disc herniation at any of the levels L1-2 to L5-S1.  There were, however, degenerative changes.  (Tr. 127)

In February, 2005, Dr. Commet diagnosed cervicalgia secondary to cervical spondylosis and lumbago secondary to lumbar spondylosis and facet arthrosis.  (Tr. 108)  Plaintiff was referred to Dr. Boike at the Michigan Spine Center to see if they could give him other exercises or postural activities.  He was continued on his Vicodin (one at bedtime to sleep) and Bextra. (Tr. 108)  In March, 2005, plaintiff was seen by Dr. Commet and reported to him that he was not making good progress.  His lower back was the same but his neck flared up.  The diagnosis was cervical and lumbar spondylosis.  An attempt return to work date was set for April 25, 2005. (Tr. 107) Also in March, 2005, he was seen for an earache, congestion and drainage.  He stated

that he was going to work on gradually increasing his physical activity to help with his cholesterol. (Tr. 106) In early April, 2005, he had gastroenteritis [stomach flu]. Plaintiff reported that he was making progress with physical therapy and was seeing Dr. Boike. He was continued on work restrictions through September, 2005. (Tr. 105) In July, 2005, he was seen for sinusitis and his neck, heart, and lungs were within normal limit. (Tr. 104) In September, 2005, he reported cervicalgia and radicular symptoms. His low back was stable and Dr. Commet said that plaintiff had a herniated disc at L5/S1. (Tr. 104) Dr. Commet extended plaintiff off work until March 2006 and noted that his disability claim with his employer should be settled before that date. (Tr. 104, 141)

In November, 2005, plaintiff saw Dr. Avery Jackson, M.D. and discussed nonsurgical options versus proceeding with a neck operation. (Tr. 123, 166-74, 179-80, 193-95) Plaintiff stated that physical therapy was functionally restorative. (Tr. 123) Plaintiff stated that he could tolerate his neck pain. (Tr. 123)

In February, 2006, plaintiff saw Dr. Tofaute, M.D., for an evaluation. (Tr. 97-102) Plaintiff walked and moved without difficulty; was not splinting his neck or lower back and moved his head and neck normally in ordinary conversation. (Tr. 98) Plaintiff complained of tightness with left lateral rotations but could do tandem heel and toes. He also walked with a stable gait and without any aid. Cervical range of motion was restricted but lumbar range of motion was almost full. (Tr. 99-101) Plaintiff reported being on Diovan, Lotrel, Vytorin, low dose aspirin, and Hydrocodone. (Tr. 98) Plaintiff reported being able to drive short distances, doing lighter outdoor chores, and if standing, was required to move around a lot. He could walk for up to 20 minutes. Id.

In March 2006, knee films showed minimal medial compartment joint space narrowing. In a letter dated March 24, 2006, Dr. Bruce Lawrence reports to Dr. Commet that plaintiff likely has a torn meniscus and was requesting to proceed with arthroscopic surgery. X-rays showed

well preserved joint space, normal tibiofemoral and patellofemoral alignment with mild sclerosis of the medial tibial plateau. (Tr. 138)  In February, 2007, plaintiff completed physical therapy for his knee and had met all his goals.  He had full range of knee motion and "very minimal" problems with stairs. (Tr. 223)  In October, 2007, Dr. Commet completed a form that indicated that plaintiff could occasionally lift and carry less than ten pounds and should enter into a regular exercise program.  Plaintiff could stand/walk less than two hours and needed a sit/stand option. (Tr. 250)  He had moderate restrictions of left and right upper extremities.  His condition would disrupt his work 120 hours of a 160 hour month. (Tr. 250)

*Analysis of the ALJ Opinion*

The ALJ found that Dr. Commet's opinion was not supported by objective clinical and laboratory findings consistent with his finding that plaintiff was limited to sedentary work.  The ALJ found that the state physician's evaluation that plaintiff could do a range of light work was more consistent with the objective record and the other medical evidence.  Substantial evidence supports this determination.  Bogle v. Sullivan, 998 F.2d 342, 347 (6th Cir. 1993).  In this case, plaintiff's objective tests were essentially normal.  His medications were mild and he reported good results with physical therapy. (Tr. 142, 202)  No physicians have recommended surgery for either his neck or his back.  In November 2005, plaintiff told Dr. Jackson that his neck pain was "not too bad." (Tr. 123)  After plaintiff's knee surgery, his goals in PT were fully met, he had very minimal problems climbing stairs, and his strength was nearly full at 4+/5 and 5/5. (Tr. 223)  No disc herniation was shown on the x-rays.

Plaintiff's neck pain was exacerbated, according to his statements to Dr. Commet, by driving the forklift.  The ALJ found that plaintiff could no longer perform that work but reasonably restricted plaintiff from that jarring activity and limited him to other work which did not require such activity.  The medical evidence is consistent with the residual functional capacity assessed by the state agency physician (Tr. 95), the objective evidence, and plaintiff's

activities. It also takes into account the finds of the treating physician, though not the conclusion. Therefore, the testimony of the vocational expert and the Medical-Vocational Guidelines both support a finding of not disabled as there are other light work jobs that plaintiff could perform and which exist in significant numbers.

*Conclusion*

Accordingly, it is recommended that the defendant's motion for summary judgment be granted, that of the plaintiff denied, and the decision denying benefits be affirmed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

           s/Virginia M. Morgan
           Virginia M. Morgan
           United States Magistrate Judge

Dated: March 19, 2009

**PROOF OF SERVICE**

The undersigned certifies that the foregoing report and recommendation was served upon counsel of record via the Court's ECF System and/or U. S. Mail on March 19, 2009.

                                            s/Jane Johnson
                                            Case Manager to
                                            Magistrate Judge Virginia M. Morgan